# ATTACHMENT

# A

*Redacted Docket Materials*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATIONS OF 50 U. S. C. §§ 1701-1707** | **SC No. 24-sc-388** <br><br> **Filed Under Seal** |

**Reference:**    **USAO Ref. #** ████████    **Subject Account(s):** ████████████████

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d).  The proposed Order would require Google LLC ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Mountain View, CA, to disclose certain records and other information pertaining to the PROVIDER accounts associated with email address ████████████████ as set forth in Part I of Attachment A to the proposed Order.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In support of this application, the United States asserts:

### LEGAL BACKGROUND AND JURISDICTION

1.       PROVIDER is a provider of an electronic communication service, as defined in 50 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under section 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

---

[1] The brackets in the emails are not part of the emails themselves; they are inserted in this affidavit to prevent accidental "clicks" on the email.

2.      This Court has jurisdiction to issue the requested Order because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is a "district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

3.      As discussed more fully below, the criminal offenses under investigation began or were committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, and no offender is known to have, or have had, residence within any United States district. *See* 18 U.S.C. § 3238.  In addition, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C.  *See* 18 U.S.C. § 3237.

4.      A court order under section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## STATUTORY BACKGROUND OF VIOLATIONS

### The Export Control Reform Act of 2018, IEEPA, and the Export Administration Regulations

5.      It is illegal to export dual-use items (i.e., items with civilian and military, terrorism, weapons of mass destruction, or law-enforcement-related applications) outside the U.S. if an export license from the DOC is required and no such license is obtained.

6.      On and before August 13, 2018, export control laws and regulations were set forth in IEEPA, 50 U.S.C. §§ 1701-1707, and the Export Administration Regulations (EAR), 15 C.F.R.

parts 730-774. Under IEEPA, the President of the U.S. was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the U.S. 50 U.S.C. § 1701(a). Pursuant to that authority, the President may declare a national emergency through Executive Orders that have the full force and effect of law. Among other things, IEEPA empowers the President to issue regulations governing exports from the U.S.

7.     On August 17, 2001, the President issued Executive Order 13,222, which declared a national emergency with respect to the unusual and extraordinary threat to the national security, foreign policy, and economy of the U.S. in light of the expiration of the Export Administration Act (EAA), 50 App. U.S.C. §§ 2401-2420, which lapsed on August 17, 2001. 66 Fed. Reg. 44,025 (Aug. 22, 2001). While in effect, the EAA regulated the export of goods, technology, and software from the U.S. Pursuant to the provisions of the EAA, the DOC's Bureau of Industry and Security (BIS) promulgated the Export Administration Regulations (EAR), 15 C.F.R. §§ 730-774, which contained restrictions on exports, consistent with the policies and provisions of the EAA. See 15 C.F.R. § 730. 2. In Executive Order 13,222, pursuant to IEEPA, the President ordered that the EAR's provisions remain in full force and effect despite the expiration of the EAA. Presidents have issued annual Executive Notices extending the national emergency declared in Executive Order 13,222 from the time-period covered by that Executive Order.

8.     On August 13, 2018, the President signed into law the National Defense Authorization Act of 2019, which includes provisions on export controls, entitled the Export Control Reform Act of 2018 (ECRA), 50 U.S.C. §§ 4801-4852. Accordingly, after August 13, 2018, export control laws and regulations are set forth in ECRA and the EAR. In part, ECRA provides permanent statutory authority for the EAR and eliminates the need for the President to declare annually national emergencies pursuant to IEEPA and Executive Order 13,222.

9. For conduct that predates August 13, 2018, IEEPA is the controlling statute. For conduct occurring after August 13, 2018, ECRA is the controlling statute. It is a crime to willfully violate, attempt to violate, conspire to violate, or cause a violation of any order, license, regulation, or prohibition issued pursuant to IEEPA or ECRA. 50 U.S.C. §§ 1705(a) & 4819.

10. Pursuant to ECRA, and before ECRA pursuant to IEEPA and its accompanying Executive Orders, the DOC reviews and controls the export of certain goods, software, and technologies from the U.S. to foreign countries through the EAR. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the U.S., and impose licensing and other requirements for items subject to the EAR lawfully to be exported from the United States. "Export" is defined in the EAR as an "actual shipment or transmission out of the United States." 15 C.F.R. § 734.13(a)(1). An export from the U.S. that transits through one country on its way to a final destination in a second country is an export to the second country. 15 C.F.R. § 734.13(c).

11. The most sensitive items subject to EAR controls are identified on the Commerce Control List (CCL). 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by Export Control Classification Number (ECCN) based on their technical characteristics. Each ECCN has export control requirements depending on destination, end user, and end use.

12. The Bureau of Industry and Security ("BIS") within the U.S. Department of Commerce ("DOC") is charged with the development, implementation, and enforcement of export controls for commercial, dual-use, and military technologies. Licensing officials at BIS provide evaluation and processing of licenses for proposed export and re-export of goods and technology from the United States.

13.     On February 24, 2022, in response to the ███ Federation's (███ ███ ███████████████, BIS announced export control restrictions on ███ that were intended to severely restrict ████ access to technologies and other items that it needs to sustain its military capabilities.  These export control measures impose a licensing policy of denial for sensitive items on which ████ relies for its defense, aerospace, and maritime industries.  These items, comprising Categories 3-9 of the CCL, include semiconductors, computers, telecommunications equipment, information security equipment, lasers, and sensors.  87 Fed. Reg. 12,226 (March 3, 2022).  Effective April 8, 2022, BIS expanded restrictions to include Categories 0-2 and thus now requires a license for exports of items in all categories on the Commerce Control List.  87 Fed. Reg. 22,130 (April 14, 2022).

14.     In addition, BIS expanded licensing requirements for ████ military end use and military end users, to apply to all items subject to the EAR.  Limited exceptions are provided only for food and medicine designated EAR99, which is subject to a licensing policy of review on a case-by-case basis.  Through two additional provisions, BIS restricted ████ and ████ military end users from access to foreign-produced items or foreign manufacturing plants that are the direct product of U.S.-origin technology or software.  ████ military end users subject to these expanded restrictions are identified on the BIS Entity List with a footnote 3 designation. *See* 15 C.F.R. §§ 746.8(a)(3), 734.9(g)

**THE RELEVANT FACTS**

15.     The BIS, Office of Export Enforcement ("OEE") is investigating a suspected illicit procurement network that involves the attempted unlawful export of ████ origin items from ████ ██████████ and alleged re-export of these items from ██████████████ to ████ in violation of the EAR, 15 CFR § 730, *et. seq.*, ECRA, 50 U.S.C. §§ 4801-4852, as well as

conspiracy to defraud the United States (18 U.S.C. § 371) and aiding and abetting violations of these provisions (18 U.S.C. § 2).



16.    ██████████████ is a ███████████-based company reportedly engaged in ███████████ that was formed on or about ██████—approximately two weeks after ███████████—and registered as ████████████. Companies created in ████ ████ can be 100% owned and operated by non-██ residents ███████████ and are afforded various tax exemptions on income and capital gains, as well as no import and export duties on goods. Because of these benefits, both legitimate and illicit actors set up companies in the ████ ██████ to enable international trade and/or procurement of goods.

17.    ████████████ is a ████-based ██████ company formed in ██████ that is reported to be a business partner of ████████ and involved in t███████████ ████████.

18.    █████████████ is a foreign national (exact citizenship currently unknown) who claims to be an employee of ████████ and has represented ████████ on numerous occasions during email discussions with an identified ████ company.

19.    During the investigation, law enforcement identified a ███████ involving ███████ purchase of a ████ origin ███████ (hereafter "the equipment") that has various applications, including, but not limited to ████████████, ██████████, ████████ and ████████ For reasons further described below, OEE's investigating agents believe ██████ and potentially others, may be attempting to illegally facilitate the re-export of the equipment from the ████ to ████ while using ████████ and ██████ as front companies

2 ████████████████████████████████████████████████████
█████████████████████████.

to procure the equipment from a ███ company. Foreign procurement agents have been known to exploit ███ export laws by arranging for export-controlled items to be firstly exported to a country (e.g., ███ that does not have the same licensing requirements as the actual end user's country. Subsequently, these items are then illicitly re-exported to a country that would normally require a BIS export license, which specifically applies to ███.

20.    Between ███ and ███, ███ used an ███ email address to communicate with an identified ███ company on multiple occasions related to the sale and shipment status of the equipment. Law enforcement's analysis of the email messages sent by ███ / ███ show that an email service provider in ███ – ███ – was utilized to send and receive email to addresses under the ███ domain. Further evaluation of those messages proved inconclusive for the actual location of the sender. However, it is unusual for non-███ persons to utilize a ███ email service. Thus, it should be considered suspicious that ███ claiming to represent a ███-based company (i.e., ███ is using an email service that is hosted in ███.

21.    According to transactional documents obtained from the ███ company, ███ was listed as the point of contact and ███ as the consignee on the ███ associated with the ███ of the equipment. The shipping address that ███ provided for ███ appears to be ███, which is considered to be a suspicious indicator from an export compliance due diligence standpoint.

22.    During email exchanges with the ███ company, ███ stated that ███ business partner, ███ was the ultimate consignee of the equipment and further certified that the equipment would stay in ███ and not be re-exported to any prohibited end users or destinations.

23.     A review of ███████ business website on or about ████████████, revealed that ████████████████ (**TARGET ACCOUNT**) was listed as ████████ company email address.

24.     Records obtained from ████████ revealed that **TARGET ACCOUNT** was created on ██████████████, and subscribed in the name of ████████████ An examination of the subscriber information belonging to **TARGET ACCOUNT** showed that the email account was created using a ██████-based phone number and from a computer with an IP address that was located in ██████████████████. Furthermore, the most recent login activity attributed to **TARGET ACCOUNT**, as of ████████████, showed the user(s) of **TARGET ACCOUNT** logged into the account from an IP address located in ████████

25.     A query of the BIS ██████████████████ found no existing licenses approved for ████████ or ████████ to export, re-export, or transfer ████-origin goods to ████████

26.     On or about ████████████, law enforcement submitted a ████████████ determination with BIS to determine if the equipment required a license for export to ████████ On or about ██████████████, BIS confirmed that the equipment was export-controlled and would require a license, with no exceptions, to be exported, re-exported, or transferred to ████████

27.     Based on the investigation to date, there is cause for concern that ████████████ and ████████ possibly at the direction of organizations and/or individuals in ████████ have procured or attempted to procure and re-export ████ goods to ████████ end users without ████████████████ authorization, in violation of export control laws.

28.     Because international procurement networks are located in far-flung locations across the globe, and are frequently far from manufacturers, distributors, suppliers, and vendors, these networks routinely rely on email to conduct business, negotiate transactions, and confirm

payments and financial information. Email, moreover, is likely to be the preferred medium of communication for the transmission of contracts, assignments, agreements, invoices, purchase orders, bills of lading, shipping instructions, technical requirements, inventory lists to purchase, wire transfer and payment confirmation, financial records, and documents pertaining to the business. Such documents are likely to be relevant to the investigation into ████████ and ████████ suspected involvement in the attempted illicit procurement of ████ origin items.

29.     Based on the facts described above, there are reasonable grounds to believe that **TARGET ACCOUNT** is being utilized in furtherance of illicit proliferation efforts and that the information sought from **TARGET ACCOUNT** is relevant and material to potential violations of 50 U.S.C. §§ 1701-1707 (IEEPA), 50 U.S.C. §§ 4801-4852 (ECRA), and 18 U.S.C. § (Conspiracy)

## REQUEST FOR ORDER

30.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.  Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

31.     The United States further requests that the Order direct PROVIDER not to notify any person, including the subscriber or customer of each account listed in Part I of Attachment A, of the existence of the application of the United States or the Order for one year from the date of the Court's Order.  *See* 18 U.S.C. § 2705(b).  This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote

computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *See* 18 U.S.C. § 2705(b).[3]

32.    In this case, the proposed Order seeks information relevant to establishing the illegal activity under investigation and identifying the individual(s) responsible.  Accordingly, disclosure may reveal the existence, scope, and direction of the United States's ongoing and confidential investigation. Once alerted to this investigation, potential target(s) could be immediately prompted to destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, and otherwise take steps to undermine the investigation and avoid future prosecution.  In particular, given that they are known to use electronic communication and remote computing services, the potential target(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.  Notification could also result in the target(s) avoiding travel to the United States or other countries from which they may be extradited.

33.    Therefore, based on the foregoing, there are reasonable grounds to believe that notification of the existence of this Order would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5).

---

[3] The government relies on § 2705(b) to seek a preclusion-of-notice order because the government is requesting only non-content information pursuant to § 2703(d), an action which is authorized by § 2703(c).  *See* 18 U.S.C. § 2703(c)(1)(B) ("governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when [it] . . . obtains a court order for such disclosure under subsection (d) of this section").  Under § 2703(c), the government has no obligation to notify the subscriber. *See* 18 U.S.C. § 2703(c)(3) ("governmental entity receiving records or information under this section is not required to provide notice to a subscriber or customer").

34.     Given the complex nature of the criminal activity under investigation and likely involvement of foreign-based coconspirators and evidence, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation will continue for the next year or longer. Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the proposed Order for a period of one year (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

35.     In this matter, the United States also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the proposed Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Commn'ns, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an ongoing criminal investigation when such jeopardy creates a compelling governmental interest in confidentiality. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). For the reasons stated above, the United States has a compelling interest in confidentiality to justify sealing the Application and Order. *See id.*

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

Date: February 20, 2024            By: /s/ John Korba
                                      JOHN KORBA
                                      Assistant United States Attorney
                                      D.C. Bar No. 1010303
                                      National Security Section
                                      United States Attorney's Office
                                      601 D Street, N.W.
                                      Washington, D.C.  20530
                                      Telephone: (202) 252-7246
                                      Email: john.korba@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATIONS OF 50 U. S. C. §§ 1701-1707** | **SC No. 24-sc-388** <br><br> <u>**Filed Under Seal**</u> |

<u>**ORDER**</u>

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, CA, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to endanger a person, flee from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(1)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for

PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

Date:

_____
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### I.  The Account(s)

The Order applies to certain records and other information for any **Google LLC** ("PROVIDER") account(s) associated with the following identifier(s) from account **INCEPTION to the PRESENT**:

- ███████████████████

### II.  Records and other information to be disclosed

#### A.  Information about the customer or subscriber of the Account(s)

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

9. any Apple, Google Cloud Messaging (GCM), Microsoft, Blackberry, or Nokia push tokens associated with this account.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from account **INCEPTION TO THE PRESENT,** constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA FOR 2703(d) ORDER FOR ONE ACCOUNT SERVICED BY GOOGLE LLC FOR INVESTIGATION OF VIOLATIONS OF 50 U. S. C. §§ 1701-1707 | SC No. 24-sc-388 <br><br> **Filed Under Seal** |

## ORDER

The United States has submitted an Application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring Google LLC ("PROVIDER"), an electronic communication and/or remote computing service provider located in Mountain View, CA, to disclose the records and other information described in Attachment A to this Order. The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. Furthermore, the Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to endanger a person, flee from prosecution, destroy or tamper with evidence, and intimidate potential witnesses. *See* 18 U.S.C. § 2705(b)(1)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that PROVIDER shall, within ten days of the date of this Order, disclose to the United States the records and other information described in Attachment A to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that PROVIDER shall not disclose the existence of this Order of the Court to any other person (except attorneys for

PROVIDER for the purpose of receiving legal advice) for a period of one year (commencing on the date of this Order), unless the period of nondisclosure is later modified by the Court.

IT IS FURTHER ORDERED that the Application and this Order are sealed until otherwise ordered by the Court, except that the United States may disclose the existence and/or contents of the Application and this Order to appropriate law enforcement authorities.

2024.02.21
12:33:03 -08'00'

Date: _____  _____
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **I. The Account(s)**

The Order applies to certain records and other information for any **Google LLC** ("PROVIDER") account(s) associated with the following identifier(s) from account **INCEPTION to the PRESENT**:

- ██████████████████

### **II. Records and other information to be disclosed**

#### **A. Information about the customer or subscriber of the Account(s)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for each account or identifier listed in Part I of this Attachment (the "Account(s)") constituting information about the customer or subscriber of the Account(s):

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses);

3. Local and long distance telephone connection records;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5. Length of service (including start date) and types of service utilized;

6. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

9. any Apple, Google Cloud Messaging (GCM), Microsoft, Blackberry, or Nokia push tokens associated with this account.

**B. All records and other information relating to the Account(s) (except the contents of communications)**

PROVIDER is required to disclose to the United States the following records and other information, if available, for the Account(s) for the time period from account **INCEPTION TO THE PRESENT,** constituting all records and other information relating to the Account(s) (except the contents of communications), including:

1. Records of user activity for each connection made to or from the Account(s), including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each electronic communication sent or received by the Account(s), including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers), and any other associated header or routing information; and

3. Identification of any PROVIDER account(s) that are linked to the Account(s) by cookies, including all PROVIDER user IDs that logged into PROVIDER's services by the same machine as the Account(s).